IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GLORIA RAVIT LEWIS, )
)
              Plaintiff, )
)
      v. )   1:17CV1115
)
ANDREW SAUL, )
Commissioner of Social Security,[1] )
)
             Defendant. )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Gloria Lewis ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.     PROCEDURAL HISTORY

Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income Benefits on November 27, 2013 and March 24, 2014, respectively, alleging a disability onset date of September 30, 2013 in both applications. (Tr. at

---

[1] Andrew Saul became Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul should be substituted for Nancy A. Berryhill as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

15, 190-98.)[2]  Her applications were denied initially (Tr. at 66-76, 101-04) and upon reconsideration (Tr. at 77-100, 108-25). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 126-27.) On October 24, 2016, Plaintiff, along with her attorney and an impartial vocational expert, attended the subsequent hearing. (Tr. at 15.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 25-27), and, on November 15, 2017, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270

---

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #8].

F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

3

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, the claimant is disabled. Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr. at 17.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

obesity; carpal tunnel syndrome; degenerative disc disease; and osteoarthritis.

(Tr. at 17.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 18.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform light work with the following further limitations:

> [S]he is limited to occasional climbing of ladders, ropes, or scaffolds; frequent climbing of ramps and stairs; occasional stooping, kneeling, crouching, and crawling; and frequent not constant fingering and handling bilaterally.

(Tr. at 19.) Based on this determination, the ALJ found under step four of the analysis that Plaintiff could perform her past relevant work as a marker/tagger as generally performed. (Tr. at 25.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act.

Plaintiff now argues that ALJ erred at step four of the sequential analysis. Specifically, she contends that her past work, as identified at her hearing, should have been considered a composite job, as it involved the combined duties of a marker/tagger with various other distribution jobs. As described in the Social Security Administration's Program Operations Manual System ("POMS"), "composite jobs have significant elements of two or more occupations and as such, have no counterpart in the DOT." POMS at DI 25005.020B (https://secure.ssa.gov/poms.nsf/lnx/0425005020). Accordingly, an "ALJ must find the Plaintiff capable of performing the composite job only if he or she can perform all parts of the job" as it was actually performed. Shealy v. Colvin, No. 8:13–2383–RMG, 2015 WL 467726, at *12–13 (D.S.C. Feb. 4, 2015) (emphasis added) (collecting case law noting that "an ALJ may not deem a plaintiff capable of performing past relevant work by dividing the demands of a composite job into two separate jobs and finding him or her capable of performing the less demanding of the two jobs," and "if Plaintiff's past job was in fact a composite job, POMS would have prohibited the ALJ from deciding whether Plaintiff could perform his past relevant work as it is generally performed").

For ALJs deciding whether past relevant work ("PRW") constitutes a composite job, POMS provides the following, further guidance:

- The claimant's PRW may be a composite job if it takes multiple DOT occupations to locate the main duties of the PRW as described by the claimant.
- If you determine that PRW was a composite job, you must explain why.

6

- When comparing the claimant's RFC to a composite job as the claimant performed it, find the claimant capable of performing the composite job only if he or she can perform all parts of the job.

POMS at DI 25005.020B.

In this case, the ALJ found that Plaintiff had past relevant work as a warehouse worker and a marker/tagger. (Tr. at 25.) The ALJ then considered each of those positions separately and found that Plaintiff could return only to the marker/tagger position. In reaching this conclusion, the ALJ specifically explained that she did *not* find that Plaintiff could perform her marker/tagger job "as 'actually' performed because [Plaintiff] reported lifting 30 to 35 pounds frequently in this position." (Tr. at 25; see also Tr. at 62-64.) The ALJ instead concluded that Plaintiff could perform this job only "as generally performed." (Tr. at 25.)

In making her findings at step four, the ALJ purports to rely on the vocational expert's testimony. However, a review of the hearing transcript and Plaintiff's work summary reveals that both Plaintiff and the vocational expert considered Plaintiff's marker/tagger duties to be "sub-points" of her more general position as a warehouse or distribution worker. (Tr. at 57.) Specifically, the vocational expert testified as follows:

> Because of the variety [in Plaintiff's job duties], I put her under warehouse or distribution worker, and that's medium and 2, DOT 922.687-058, and I listed a couple of sub-points I guess. For instance, she was a marker or the tagger, they call it marker in the DOT. And that was light and 2. [S]he was also an inspector and hand packer, and that was medium and 2. And I could have listed others, but that's why I lumped them under warehouse labor.

(Id.) Overall, the evidence shows that Plaintiff worked several jobs simultaneously during her time with her former employer, VF Jeanswear, and was required to perform the duties of several different jobs on any given workday, all of which required "a lot of walking" and heavy lifting. (Tr. at 57, 63, 217-18, 235-37.) See also Shealy, 2015 WL 467726, at *13 (finding that

7

substantial evidence did not support that ALJ's step four finding where the vocational expert testified that the plaintiff's prior work involved two jobs performed in tandem, and the ALJ failed to discuss whether this constituted a composite job). This testimony clearly supports the composite nature of Plaintiff's job, in that the vocational expert listed "multiple DOT occupations to locate the main duties of the PRW as described by the claimant." POMS at DI 25005.020B (emphasis added).

Moreover, the vocational expert did not identify the marker position as the job which best matched Plaintiff's work duties, as the ALJ suggests. Instead, the ALJ specifically requested that the vocational expert pull the marker job out separately. (Tr. at 58.) Only then did the vocational expert testify that Plaintiff could perform the work, and he did so with reluctance, stating as follows:

> Well, she can obviously do the marker, my only hesitation is that even though that was her primary, she was often called to do other things which normally would fall into the medium. So, a marker as described by the DOT, yes this hypothetical would allow that. It would not allow the warehouse worker, that being medium.

(Tr. at 58.) Accordingly, the vocational expert's testimony fails to provide substantial evidence to support the ALJ's step four that Plaintiff could return to her past relevant work. The ALJ in the instant case clearly divided the demands of a composite job, as described at length by the Plaintiff and the vocational expert, into separate positions and found Plaintiff capable of performing only the least demanding job, and even then, only as generally, rather than actually, performed. See Shealy, 2015 WL 467726, at *13.

> The Ninth Circuit Court of Appeals has spoken on this issue and held that an ALJ may not deem a plaintiff capable of performing past relevant work by dividing the demands of a composite job into two separate jobs and finding him or her capable of performing the less demanding of the two jobs. See, e.g., Vertigan v. Halter, 260 F.3d 1044, 1051 (9th Cir. 2001) (finding that the

8

ALJ's conclusion that claimant's past relevant work included work as a "cashier" was not supported by substantial evidence—the VE had found her past relevant work to be that of a pharmacy clerk or sales clerk, not as a receptionist or cashier, and the VE stated, when considering Vertigan's testimony, she had never performed work solely as a cashier); Valencia v. Heckler, 751 F.2d 1082, 1086 (9th Cir. 1985) ("Every occupation consists of a myriad of tasks, each involving different degrees of physical exertion. To classify an applicant's 'past relevant work' according to the least demanding function of the claimant's past occupations is contrary to the letter and spirit of the Social Security Act."); see also Roberts v. Astrue, No. 8:08–CV–120–T–17EAJ, 2009 WL 722550, at *3 (M.D. Fla. Mar.18, 2009) ("In deciding whether claimant can perform [her] past relevant work, an ALJ may not separate a composite job into two jobs and fail to focus on all the demands of the composite job.").

Although it appears that the Fourth Circuit Court of Appeals has not discussed composite jobs and the Commissioner's obligation to determine whether a past job should be considered a composite job, and, if so, how to analyze it properly with regard to Step 4 of the sequential questions, the Court located a few pertinent district opinions. In Plumb v. Astrue, C/A No. 8:10–3090–RBH, 2012 WL 768058, at *6 (D.S.C. March 7, 2012), where the plaintiff objected to the ALJ's finding that he could perform his past relevant work as a liquor store owner/operator and his work should have been deemed a composite job, this Court ruled that on remand the ALJ must determine whether the past relevant work was a composite job. In Plumb, the VE had testified that the plaintiffs work broke down into two DOTs and the plaintiff could not perform the job as actually performed because his prior work involved lifting boxes and other medium work. Id. Similarly, the VE in this case stated that Plaintiff's prior job duties as order clerk were always performed with the duties of material handler or store's laborer, and the ALJ also failed to discuss whether the job was a composite job. This is significant because if Plaintiff's past job was in fact a composite job, the POMS would have prohibited the ALJ from deciding whether Plaintiff could perform his past relevant work as it is generally performed.

Id.[5]

---

[5] To the extent the ALJ purported to rely on Plaintiff's testimony or work summary report for this determination, that testimony also fails to provide substantial evidence in support of this determination. In her testimony, Plaintiff testified to her various job duties and roles, noting that if she "was in tagging" she would be "standing there for nine hours" pulling off tags, but that she would also box or package items. (Tr. at 39-43.) She further testified to other various warehouse duties. (Tr. at 42.) When the vocational expert characterized her past work as that of a warehouse or distribution worker, the ALJ asked Plaintiff further about her positions, and Plaintiff testified that even while working in the tagging position, "a lot of times I wouldn't work there, I'd go at different jobs in the warehouse." (Tr. at 57.) Plaintiff agreed with the ALJ that "primarily"

9

The ALJ's error at step four is compounded by her failure to make an alternative finding at step five of the sequential analysis. In fact, Plaintiff now argues that, applying her amended onset date of July 20, 2015, the Medical-Vocational Guidelines direct a finding of disabled at step five. (Pl.'s Br. [Doc. #12] at 12-13.) Based on this assessment, Plaintiff asks the Court to award benefits. However, such a determination should be considered by the agency in the first instance. Although substantial evidence fails to support the ALJ's step four determination as presented, the ultimate determination of whether Plaintiff can return to her past relevant work, or any work, must be made by the factfinder, utilizing the standards set out above. Moreover, Plaintiff attempts to amend her alleged onset date, placing her in the "advanced age" category for purposes of step five, in the briefing before this Court, after the ALJ issued her administrative decision. Plaintiff essentially asks the Court to amend her onset date, evaluate and define the duties of her past relevant work, determine whether she could return to her past work, and then apply the Medical Vocational Guidelines to conclude that benefits should be awarded. These are administrative determinations to be made by the factfinder in the first instance, not by this Court. Therefore, the Court will recommend that Plaintiff's Motion be granted to the extent that the ALJ's decision be vacated and that the case remanded for further review.

---

the position was "called the tagger," but there is no indication that the job label defined the scope of her duties. Similarly, in her work summary report, Plaintiff identified her position as a "tagger," which also included general warehouse duties, including lifting 30-35 pounds "depending on the job for that day," specifically noting that some shifts she would be assigned to receiving, print stations, or returns. (Tr. at 217-18, 235-37.) Indeed, as noted above, the ALJ accepted that Plaintiff's position as "tagger" involved lifting duties of 30-35 pounds, but failed to acknowledge or account for the fact that this heavy lifting was included in Plaintiff's description of her other various warehouse duties. Thus, the testimony of both Plaintiff and the vocational expert reflect that the position was a composite job, and Plaintiff's work summary in the record further supports that testimony, and none of the testimony or items in the record provide substantial evidence to support the ALJ's determination that Plaintiff's prior position was properly characterized solely as that of a tagger under DOT code 209.587-034.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #14] should be DENIED, and Plaintiff's Motion for Judgment Reversing the Commissioner [Doc. #11] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 2nd day of January, 2020.

/s/ Joi Elizabeth Peake
United States Magistrate Judge